RECEIVED
IN LAKE CHARLES, LA.

JUN 21 2013

TONY R. MOORE, CLERK
BY⎯⎯⎯⎯⎯⎯⎯⎯
                    DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **KEITH HARDESTY** | : | **DOCKET NO. 2:13-CV-293 –PM-KK** |
| **VS.** | : | **JUDGE MINALDI** |
| **WATERWORKS DISTRICT NO. 4 OF WARD FOUR, ET AL** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [Doc. 2], filed by the defendants, Waterworks District No. 4 of Ward Four, Occie Norton, Kenny Cochran, and Ollie L. "Johnny" Johnson, III. The plaintiff, Keith Hardesty, filed an opposition [Doc. 5] and the defendants filed a reply [Doc. 6]. For the foregoing reasons, the defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### FACTUAL BACKGROUND

This lawsuit was originally instituted in the Fourteenth Judicial District Court in Calcasieu Parish, Louisiana, on January 15, 2013.[1] The plaintiff, Keith Hardesty, brings claims stemming from a January 16, 2012 Board of Commissioners meeting, in which his employment as Superintendent of Waterworks District No. 4 of Ward Four ("District 4"), was terminated by a Board vote of three to one.[2] In addition to suing District 4, the plaintiff also brings claims against the three individual Board members who voted to terminate him, which includes Occie

---

[1] Pl.'s Compl., [Doc 1-2].

[2] *Id.* at ¶¶ 1-3.

1

Norton, Kenny Cochran, and Ollie L. "Johnny" Johnson, III (collectively "the individual defendants").[3]

The plaintiff alleges before the vote, the individual defendants, acting within their scope of employment, communicated electronically and at various times and places to discuss and agree upon a course of action to vote to terminate him.[4]  Allegedly, the individual defendants wished to terminate the plaintiff because of: (1) contrary opinions he had expressed on District 4's management policies, goals and missions, long-term plans, and best business practices; (2) his "reasonable disagreement" with the Board members; and (3) his alignment with the one board member, Richard Herbert, who would later vote against his termination.[5]  A couple of weeks before the vote, on January 3, 2012, Henry G. Glass, past Board President of District 4, personally informed the plaintiff of the defendants' plan.[6]  Glass communicated to the plaintiff that he had tendered his resignation to District 4 due to disagreement with defendants' announced plan to dismiss the plaintiff at the January 16, 2012, meeting.[7]

On January 16, 2012, the plaintiff was formally discharged by a vote of three to one by the Board of Commissioners.[8]  As noted *supra*, the individual defendants voted in favor of dismissal and Richard Hebert voted against dismissal of the plaintiff.[9]

---

[3] *Id.* at ¶ 1.

[4] *Id.* at ¶¶ 6-7.

[5] *Id.* at ¶ 12.  The plaintiff specifically notes in his petition that he opposed the individual defendants' plan to eventually place District 4 under the jurisdiction of the City of Westlake, even though this plan was "opposed privately and publicly by a great majority of defendant's water customers." *Id.* at ¶ 16.

[6] *Id.* at ¶ 4.

[7] *Id.*

[8] *Id.* at ¶ 3.

[9] *Id.* at ¶ 6.

After the plaintiff filed this lawsuit, the defendants timely removed the action to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331.[10]  The defendants now move to dismiss all of the plaintiff's claims.

## RULE 12(B)(6) STANDARD

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations.  FED. R. CIV. P. 12(b)(6).  When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp. 2d 383, 388 (E.D. La. 2006).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 652, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.*  Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.,* 484 F.3d 776, 780 (5th Cir.2007) (quoting *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal,* 556 U.S. at 664, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they

---

[10] Not. of Removal, [Doc. 1].

must be supported by factual allegations.")

In the Fifth Circuit case *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009), the court held that neither *Twombly* nor *Ashcroft* created a heightened pleading standard for complaints, and that these cases instead only "explicate" Rule 8(a)(2), particularly because *Twombly* recognized that pleading requirements could only be changed through amendment of the Federal Rules. *Id.* at 258 – 59 (citing *Twombly*, 550 U.S. at 569, 127 S.Ct. 1973 n. 14). Accordingly, Fed. R. Civ. P. 8(a)(2) still only requires a "'short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (citations omitted). This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law, provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257, *Twombly,* 555 U.S. at 556, 127 S.Ct. at 1965.

## LAW & ANALYSIS

This action calls into question the legality of the January 16, 2012, vote that took place in Executive Session of District 4, which ended in the dismissal of the plaintiff's employment as District 4's Superintendent.   The defendants request dismissal of all claims brought by the plaintiff.  The undersigned will address each argument in turn.

## I.    Open Meetings Law Claim

In his petition, the plaintiff first argues that some time before the meeting in question, the individual defendants communicated both electronically and in person at different times and places in direct violation of the Open Meetings Law, La. Rev. Stat. ann. § 42: 14, thus nullifying

4

their subsequent vote to terminate him.[11]  In response to this claim, the defendants argue that the

plaintiff's Open Meetings Law claim is statutorily perempted.  The plaintiff does not counter this

argument, and in fact acknowledges that he did not timely complain as per the dictates of the

Open Meetings Law.

> The Open Meetings Law requires that:
>
> A.  Every meeting of any public body shall be open to the public unless closed pursuant to R.S. 42:16, 17, or 18.
>
> B.  Each public body shall be prohibited from utilizing any manner of proxy voting procedure, secret balloting, or any other means to circumvent the intent of this Chapter.
>
> C.  All votes made by members of a public body shall be viva voce and shall be recorded in the minutes, journal, or other official, written proceedings of the body, which shall be a public document.

La. Rev. Stat. ann. § 42: 14.

Any action by a public body in violation of the Open Meetings Law is voidable. "A suit

to void any action must be commenced within sixty days of the action." La. Rev. Stat. ann. §

42:24.  Jurisprudence has settled that this sixty day limitation is peremptive in nature. *See*

*Greemon v. City of Bossier City*, 10-2828, 11-0039 (La. 7/1/11); 65 So.3d 1263, 1268, n. 3;

*Hoffpauir v. Louisiana Department of Public Safety & Corrections*, 99-1098 (La. App. 1 Cir.

6/23/00); 762 So.2d 1219, 1222.

The plaintiff claims that the individual defendants' communications prior to the meeting

on January 16, 2012 violated the Open Meetings Law.  Assuming *arguendo* that their actions did

violate the Open Meetings Law, since the plaintiff instituted this action nearly one year after the

alleged infraction occurred, his claim is perempted by the sixty-day limitation established by §

42: 24.  Accordingly, the plaintiff's Open Meetings Law claim must be dismissed.

---

[11] Pl.'s Compl. at ¶ 7.

## II.   First Amendment Retaliation Claim under 42 U.S.C. § 1983

### A.  What Type of Wrongful Termination Claim is the Plaintiff Asserting?

Construing the plaintiff's petition liberally, as a court must do in a Rule 12(b)(6) motion, the plaintiff's main assertion appears to be that his employment was terminated in retaliation for certain First Amendment activities he engaged in; namely, voicing particular opinions on the Board's choices in running District 4 and aligning himself with certain Board members and District 4 constituents who agreed with his opinions.

The defendants argue that the plaintiff's wrongful termination claim must be dismissed because Louisiana is an "at-will" state, and thus the Board could terminate him for any reason at any time without explaining why.  The plaintiff counters that he was terminated because he engaged in certain protected First Amendment speech activity, and thus it is immaterial whether Louisiana is an at-will state.

Under Louisiana law, typically, "a man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing."  La. Rev. Stat. ann. § 2747. There are clear exceptions to this rule, however, with the most relevant exception being as follows: "an at-will public employee may not be discharged for exercising his First Amendment right to freedom of expression."  *Cabrol v. Town of Youngsville*, 106 F.3d 101, 108 (5th Cir. 1997) (citing *Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir. 1990)).  Accordingly, even assuming that the plaintiff was an at-will public employee, his claim that he was wrongfully terminated in retaliation for certain views he expressed to the Board would survive, notwithstanding any at-will affirmative defense the defendants may raise.  The undersigned will therefore turn to the substance of the claims in the petition, to ascertain whether he has sufficiently pled the elements of an actionable First Amendment retaliation claim.

### 1.  Association Claim

The plaintiff appears to argue that he was terminated, in part, because of his association

with "customers and Board members" of District 4, "who openly and publicly agreed with [his]

position on facts and opinions he expressed."[12]  While other courts have addressed First

Amendment retaliation claims and the right to association, it appears the right to association was

specifically linked to associating with a union:

> Th[e] right of association encompasses the right of public employees to join
> unions and the right of their unions to engage in advocacy and to petition
> government in their behalf. Thus, the first amendment is violated by state action
> whose purpose is either to intimidate public employees from joining a union or
> from taking an active part in its affairs or to retaliate against those who do.

*Hitt v. Connell*, 301 F.3d 240, 245-46 (5th Cir. 2002) (quoting *Boddie v. City of Columbus,*

*Miss.*, 989 F.2d 745, 749 (5th Cir. 1993)). The undersigned thus expresses doubts that the

plaintiff's First Amendment association claim is viable, although this conclusion may be

immaterial, as it appears much of his association claim overlaps with his First Amendment

speech claim, discussed *infra.*

### 2.  Speech Claim

The plaintiff also asserts that he was terminated based on certain opinions and views he

held, in violation of the First Amendment's protection of speech.  As noted *supra,* a public

employee may not be retaliated against for exercising his First Amendment rights to free

speech. *See Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708

(1983); *Beattie v. Madison County Sch. Dist.,* 254 F.3d 595, 600-01 (5th Cir. 2001).  For the

plaintiff's freedom of speech-related retaliation claim, a plaintiff must show: " (1) an adverse

employment action was taken, (2) speech involving a matter of public concern was uttered, (3)

---

[12] *Id.* at ¶ 12.

7

the employee's interest in speaking outweighs the employer's interest in efficiency, and (4) the protected speech precipitated the adverse employment action." *McCoy v. City of Shreveport,* 492 F.3d 551, 562 (5th Cir.2007).

On the face of the plaintiff's complaint, it is clear that he has asserted that an adverse employment action was taken, as he claims the Board members terminated him for his contrary views. On the second factor of the test, whether his speech involved "a matter of public concern," a court must inquire whether the speech "relat[es] to any matter of political, social, or other concern to the community." *Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir. 2001). Speech will not fall under the "matter of public concern" designation if it is speech that is purely on a matter of personal interest to the employee or else speech made pursuant to the employee's official duties. *Benningfield v. City of Houston,* 157 F.3d 369, 375 (5th Cir. 1998); *Connick,* 461 U.S. at 147 – 48, 103 S.Ct. 1684; *Garcetti v. Ceballos,* 547 U.S. 410, 421, 126 S.Ct. 1951 (2006). "Mixed speech" that references matters of public and personal interest remain protected by the First Amendment as long as it was made *predominantly* 'as a citizen.'" *Harris ex. rel. Harris v. Pontotoc Cnty. Sch. Dist.,* 635 F.3d 685, 692 (5th Cir. 2011) (quoting *Dodds v. Childers,* 933 F.2d 271, 273 (5th Cir. 1991)).

Addressing the face of the complaint, it is unclear exactly what the content of the plaintiff's speech was. The plaintiff specifically references a disagreement he had with the Board about placing District 4 under the jurisdiction of Westlake (a move he asserts District 4 citizens largely opposed), but otherwise makes vague assertions that the Board retaliated against him for "his statements of both fact and opinion concerning the management policies of [District 4], the goals and mission of [District 4], the long-term plan of [District 4], the best business

8

practices of [District 4] and his reasonable disagreement with the Board members . . ."[13]

Construing the complaint in the light most favorable to the plaintiff, it appears that at least *some*

of this speech could qualify as protected political speech he made primarily as a citizen, and not

personal speech he made solely in his official duty as superintendent.  Without further factual

development, it would be premature to decide otherwise.

Turning to the third factor, whether the plaintiff's interest in speaking outweighs his

employer's desire for efficiency, as succinctly summarized by Judge Lynn in *Petrie v. City of*

*Grapevine*, 904 F.Supp. 2d 569 (N.D. Tex. 2012),

> Even if a public employee speaks on a matter of public concern, his speech is not
> protected unless the employee's interest in expressing himself on the matter
> outweighs the government's interest in promoting the efficiency of its public
> services. *See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731,
> 20 L.Ed.2d 811 (1968). To resolve this issue, the court performs a balancing test
> that "in reality is a sliding scale or spectrum upon which 'public concern is
> weighed against disruption' " to the government's interest in efficient
> operation. *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir.1995) (quoting *Click v.*
> *Copeland,* 970 F.2d 106, 112 (5th Cir.1992) (internal quotations omitted)). "The
> more central a matter of public concern is to the speech at issue, the stronger the
> employer's showing of counter-balancing governmental interest must
> be." *Coughlin v. Lee,* 946 F.2d 1152, 1157 (5th Cir.1991) (citing cases). In
> weighing the parties' competing interests, the Court considers, among other
> things:
>
> > (1) the degree to which the employee's activity involved a matter
> > of public concern; (2) the time, place, and manner of the
> > employee's activity; (3) whether close working relationships are
> > essential to fulfilling the employee's public responsibilities and the
> > potential effect of the employee's activity on those relationships;
> > (4) whether the employee's activity may be characterized as
> > hostile, abusive, or insubordinate; and (5) whether the activity
> > impairs discipline by superiors or harmony among coworkers.

*Id.* at 582.  Once again, the petition alone contains insufficient information to discern exactly

what the plaintiff was complaining about, where he brought up these issues, and how the

_____

[13] *Id.* at 12.

situation played out when he did bring up these issues (aside from the fact that he was fired). Further factual development is necessary in order to ascertain whether District 4's interest in promoting efficiency outweighed any interest he had in expressing his views.

On the fourth prong, the plaintiff has clearly pled that his protected speech activity occurred before he was terminated, so this part of the test is met. Accordingly, to the extent that the plaintiff asserts a First Amendment retaliation termination claim for certain speech activities the plaintiff engaged in, the defendants' request for dismissal is denied.

### B. In What Capacity is the Plaintiff Bringing his 42 U.S.C. § 1983 Claims against the Various Defendants?

The defendants argue that, assuming the plaintiff has an actionable § 1983 claim, the claim still must be dismissed because of additional deficiencies in his petition. They point out the plaintiff asserts in his petition that the individual defendants' secret meetings were done under the color of the individual defendants' employment, which in turn makes District 4 "vicariously liable."[14] The defendants correctly argue that District 4 cannot be liable under the circumstances, because vicarious liability does not attach to claims brought under § 1983. In his opposition brief, the plaintiff pivots by arguing that he did not mean to assert a vicarious liability claim, but rather was asserting a municipal liability claim against the municipal entity of District 4. As such, the individual defendants' actions were pursuant to District 4's direction or authority, or else the individual defendants were simply carrying out a District 4 policy or custom.

The defendants also assert that, to the extent the plaintiff requests § 1983 punitive damages against District 4, this request must also be denied. The defendants correctly argue that punitive damages against governing bodies (in this case, District 4) are not permitted under

---

[14] *Id.* at ¶¶ 9-10.

§1983. *See City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 267, 101 S.Ct. 2748 (1981) ("Damages awarded for punitive purposes, therefore, are not sensibly assessed against the governmental entity itself."). Punitive damages would be available, however, against the individual defendants if they were sued in their individual capacities.

The confusion on vicarious liability and punitive damages arises in part from the fact that the plaintiff has failed to specify the capacity or capacities in which the defendants are sued in his petition. The Fifth Circuit follows the majority view among the circuits that, when a plaintiff fails to allege in what capacity he is suing the defendants, a court must look to the substance of the plaintiff's claim, the relief sought, and the course of proceedings to discern the nature of the § 1983 suit. *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973); \ *Biggs v. Meadows*, 66 F.3d 56 (4th Cir. 1995); *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir. 1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *Conner v. Reinhard,* 847 F.2d 384, 394 (7th Cir.1988), *cert. denied,* 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); *Price v. Akaka,* 928 F.2d 824, 828 (9th Cir.1990), *cert. denied,* 502 U.S. 967, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991); *Houston v. Reich,* 932 F.2d 883, 885 (10th Cir.1991); *Lundgren v. McDaniel,* 814 F.2d 600, 604 (11th Cir.1987).

## 1. Municipal Liability Claim against District 4

The court will first assess whether the plaintiff has asserted an actionable municipal liability claim against District 4. In relevant part,  42 U.S.C. § 1983 provides, "[e]very person who, under color of any statute, ordinance,...of any State...subjects...any citizen of the United States...to the deprivation of any rights... secured by the Constitution...shall be liable to the party injured in an action at law..."  As noted by the Supreme Court,

> A municipality or other local government may be liable under § 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes"

a person "to be subjected" to such deprivation. But, under § 1983, local governments are responsible only for "their *own* illegal acts." They are not vicariously liable under § 1983 for their employees' actions.

*Connick v. Thompson*, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (citations omitted).  To the extent that the plaintiff asserts a vicarious liability claim against District 4, therefore, jurisprudence clearly indicates that the plaintiff cannot assert a vicarious liability claim under § 1983 against District 4.  As noted *supra*, however, the plaintiff alleges that his petition contains allegations that the defendants' actions were pursuant to District 4's direction or authority, or else the individual defendants were simply carrying out a District 4 policy or custom, indicating that he is asserting a municipal liability claim against District 4.

In their reply brief, the defendants argue that, even if the complaint could be construed to assert a municipal liability claim against District 4, the plaintiff's claim still fails because the single action in terminating the plaintiff cannot constitute a "custom or usage" within the meaning of *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the benchmark Supreme Court decision on municipal liability.  The defendants ignore the decades of caselaw that followed *Monell* in order to make this assertion, however.  In order to assert a § 1983 claim against a municipality, a claimant may "identify a policy or custom that gave rise to the plaintiff's injury." *Monell*, 426 U.S. at 694.  Municipal liability may also attach, however, if the claimant can show a "single action by a municipal official possessing the final policymaking authority regarding the action in question [which] constitutes the official policy of the municipality." *Brady v. Fort Bend Cnty.*. 145 F.3d 691, 698 (5th Cir. 1998) (citing *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 1736-37, 138 L.Ed.2d 1 (1997)). Determining whether an official enjoys final policy-making authority for a specific action turns on review of state and local law. *Bolton v. City of Dallas, Tex.,* 541 F.3d 545, 548

(5th Cir 2008).  Relevant to the inquiry of final policy making authority is whether the decision

is "unreviewable by any other official body or governmental body."  *Brady*, 145 F.3d at 700

(construing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452

(1986)).

　　　While inartfully pled, it does appear that the plaintiff is asserting he was terminated

because of the unilateral decision of the Board members who may have possessed "final policy-

making authority" over employment decisions within District 4. Without further information

from the parties (information on local ordinances, charters, regulations, and manuals), the court

cannot discern whether the Board actually had final policymaking authority, and thus dismissal

of the municipal liability claim against District 4 would be premature. Accordingly, while the

court will dismiss the plaintiff's complaint to the extent it asserts a vicarious liability claim

against District 4, it still finds that the plaintiff has made sufficient allegations to establish a

potential municipal liability claim against District 4.

## 2.  Individual Capacity Claim

　　　Additionally, the court must address whether the plaintiff is asserting an individual

capacity claim against the individual defendants as well.  The Fourth Circuit (which, like the

Fifth Circuit, looks to the "course of proceedings" to discern capacity claims), succinctly

summarized what factors a court may consider in determining whether a plaintiff has pled an

individual capacity claim:

> One factor indicating that suit has been filed in such a manner might be the
> plaintiff's failure to allege that the defendant acted in accordance with a
> governmental policy or custom, or the lack of indicia of such a policy or custom
> on the face of the complaint. *See Hill v. Shelander,* 924 F.2d 1370, 1374 (7th
> Cir.1991) (finding a personal capacity claim where "the unconstitutional conduct
> alleged involves [the defendant's] individual actions and nowhere alludes to an
> official policy or custom that would shield him from individual culpability"); *see
> also Conner,* 847 F.2d at 394 n. 8. Another indication that suit has been brought

against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits. *See, e.g., Shabazz v. Coughlin,* 852 F.2d 697, 700 (2d Cir.1988); *Pride v. Does,* 997 F.2d 712, 715 (10th Cir.1993); *Price,* 928 F.2d at 828; *Gregory,* 843 F.2d at 119-20; *Hill,* 924 F.2d at 1374. The nature of any defenses raised in response to the complaint is an additional relevant factor. Because qualified immunity is available only in a personal capacity suit, *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally. *See Conner,* 847 F.2d at 394; *Lundgren,* 814 F.2d at 604. Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.

*Biggs,* 66 F.3d at 61.

Turning to the plaintiff's petition, the results are mixed: the plaintiff does request compensatory and punitive damages,[15] indicating a claim against the defendants in their individual capacities.  The defendants have not, however, asserted a defense of qualified immunity.  Further, the plaintiff describes the defendants' actions as "officially carrying out a policy that they established *on behalf of the defendant*, District which was an unlawful policy, unlawfully established."[16]  This confusing language on the one hand could indicate that the individual defendants singularly created a special unlawful policy solely as it related to the plaintiff in discharging him, which tips in favor of individual action and not District 4 action.  On the other hand, as noted *supra*, if these individual defendants were the final policy-makers for District 4, this would implicate District 4 itself under a municipal liability theory.

Out of an abundance of caution, and because some factors seem to indicate an individual capacity claim, the court will construe the plaintiff's petition as alleging an individual capacity claim against the individual defendants as well.  Accordingly, the court denies the defendants' request to dismiss the plaintiff's claim for punitive damages to the extent that the plaintiff may

---

[15] *Id.* at 28.

[16] *Id.* at ¶ 11 (emphasis added).

assert this claim against the individual defendants in their individual capacity, but dismisses the claim for punitive damages as it relates to the plaintiff's municipal liability claim against District 4, as punitive damages are clearly unavailable against municipalities.

## III.    Section 1983 Conspiracy Claim

The plaintiff also avers that the termination of his employment was a conspiracy to violate his civil rights guaranteed by the Constitution of the United States and the States.[17] Additionally, the plaintiff claims that the individual defendants conspired to unlawfully suppress and discourage public comment at public meetings.[18] The defendants counter that the members of the Board, together with District 4, constitute one entity, and as such, cannot conspire to violate the plaintiff's civil rights.

As aptly summarized by Judge Kent in *Thompson v. City of Galveston*, 979 F.Supp. 504 (S.D. Tex. 1997),

> A single legal entity . . . is incapable of conspiring with itself for the purposes of § 1983. *See Baldwin v. University of Texas Medical Branch at Galveston*, 945 F.Supp. 1022 (S.D.Tex.1996), *aff'd*, 122 F.3d 1066 (5th Cir.1997); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir.1994). It is a longstanding rule in this Court and in the Fifth Circuit that "a corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard,* 30 F.3d at 653 (citing *Nelson Radio & Supply Company v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir.1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953)). The Fifth Circuit and several district courts within the Circuit have applied this "intracorporate conspiracy" doctrine to entities other than corporations. *See, e.g., Baldwin*, 945 F.Supp. at 1034 (applying the doctrine to a medical school and its employees); *Hilliard*, 30 F.3d at 653 (finding that the doctrine applied to a school board and its members); *Moody v. Jefferson Parish School Board*, 803 F.Supp. 1158, 1166 (E.D.La.1992), *aff'd*, 2 F.3d 604 (5th Cir.1993)(school board, principal, vice-principal, and various teachers are all employed by the Jefferson Parish School Board and, thus, are a single entity); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F.Supp. 1323, 1330 (N.D.Tex.1988) (high school and its officials

---

[17] *Id.* at ¶¶ 11, 15, 22.

[18] *Id.* at ¶ 18.

constitute a single entity); *Chambliss v. Foote,* 421 F.Supp. 12, 15 (E.D.La.1976), *aff'd,* 562 F.2d 1015 (5th Cir.1977), *cert. denied,* 439 U.S. 839, 99 S.Ct. 127, 58 L.Ed.2d 137 (1978) (university and its officials considered a single legal entity).

*Id.* at 512.

In opposition to the defendant's motion to dismiss, the plaintiff claims that the acts of the individual defendants before the meeting in question are distinct from their acts during the meeting. According to the plaintiff, the actions of the three Board members before the meeting constitute actions outside of their official capacity, therefore making it possible for the board members to conspire in their individual capacity to later take action in their official capacity. The plaintiff does not point to any case law in support of his argument, nor can this court find any case law to support such a distinction.  It is well settled that organizations such as District 4 and their employees constitute a "corporation" for purposes of conspiracy analysis. As such, the defendants could not have unlawfully conspired against the plaintiff, and thus the defendants' motion to dismiss the plaintiff's conspiracy claim must be granted.

## IV.    Conspiracy to Violate Louisiana Civil Rights

The plaintiff also claims that the defendants unlawfully conspired to violate his civil rights guaranteed by the State of Louisiana.  State civil rights claims are similar to claims arising out of § 1983, and Louisiana courts look to § 1983 when conducting their analysis. *See Clulee v. Bayou Fleet, Inc.,* 04-106 (La. App. 5th Cir. 5/26/04); 875 So.2d 878, 883.

For the reasons set forth in section III, *supra,* the defendants could not have unlawfully conspired to violate the plaintiff's Louisiana civil rights. Therefore, the defendant's motion to dismiss the plaintiff's conspiracy claim in relation to Louisiana civil rights must be granted.

## V.    Imprudent Management/Breach of Fiduciary Duty Claims

The plaintiff alleges that his dismissal constituted imprudent management and breach of

fiduciary duty by the defendants because of plaintiff's years of experience with District 4.[19] The defendants argue that the plaintiff's claim of imprudent management/breach of fiduciary duty is unfounded because there is no fiduciary duty owed by an employer to an employee. In Louisiana, jurisprudence has established that under limited circumstances, employees owe employers a fiduciary duty. *Odeco Oil & Gas Co. v. Nunez*, 87-0855 (La. App. 1 Cir. 10/12/88); 532 So.2d 453 ("The employee is duty bound not to act in antagonism or opposition to the interest of the employer."). However, this court can find no precedent imposing a general fiduciary duty owed by employers to employees, nor has the plaintiff pointed to any such cases.

In this case, the plaintiff's claim against the defendants stems from his employment as the superintendent of District 4. The plaintiff claims that his discharge by majority vote of the board was imprudent due to his years of experience. In support of his argument, the plaintiff references a petition to the Police Jury signed by over 600 customers of District 4 that expressed their displeasure about the plaintiff's discharge. While this court agrees that the plaintiff appeared to be an experienced and well-respected employee, there is no jurisprudence which holds that District 4 owed a general fiduciary duty to him which would entitle him to recover. Therefore, the defendants' motion to dismiss the plaintiff's breach of fiduciary duty claim must be granted.

## VI.   Malicious Prosecution and Defamation Claims

The plaintiff alleges a malicious prosecution and defamation claims based on: (1) the defendants' denial of the plaintiff's right to unemployment compensation, which was later allowed by an Administrative Law Judge[20] and (2) the defendants' filing of a criminal charge

---

[19] *Id.* at ¶ 19.

[20] *Id.* at ¶¶ 24-27. That denial of unemployment compensation allegedly resulted in defamation of the plaintiff's character and reputation. *Id.* at ¶ 26.

against the plaintiff, alleging that he committed payroll fraud.[21]

## A.  Malicious Prosecution

To successfully present a malicious prosecution claim, a plaintiff must prove the following six elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages conforming to legal standards resulting to plaintiff. *Leblanc v. Pynes*, 46, 393, p. 6 (La. App. 2 Cir. 7/13/11); 69 So.3d 1273, 1279. "Never favored in our law, a malicious prosecution action must clearly establish that the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent." *Arledge v. Sherril*, 32, 189 (La. App. 2 Cir. 8/18/99); 738 So.2d 1215, 1222.

In their motion to dismiss, the defendants argue that with criminal claims still pending against the plaintiff, it is impossible to satisfy the third prong of the malicious prosecution test. Assuming this to be true, and without refute from the plaintiff in his opposition memorandum, this court agrees. Furthermore, Hardesty was the plaintiff, not the defendant, in the unemployment proceedings that he claims were "maliciously defended" by the defendants.  This fails to satisfy the second prong of the malicious prosecution test, and is also not refuted by the plaintiff in his opposition brief. Therefore, the defendants' motion to dismiss the plaintiff's malicious prosecution claim must be granted.

## B.  Defamation

Turning to the plaintiff's defamation claim, the plaintiff alleges that the defendants

---

[21] *Id.* at ¶ 25.

unlawfully defamed him by denying him unemployment benefits that were later granted to him by an Administrative Law Judge over the defendants' objection, and by the defendants' filing of a criminal charge in relation to the plaintiff's employment with District 4.

Defamation is committed either by libel or slander.  Libel is defamation which is "expressed by print, writing, pictures, or signs", while slander is communicated by "oral expressions or transitory gestures." *Cluse v. H & E Equipment Services, Inc.*, 09-574 (La. App. 3 Cir. 3/31/10); 34 So.3d 959, 970.  Generally, unprivileged statements that result in defamation to an individual are actionable under Louisiana law. *See Lemke v. Keiser & Auzenne, L.L.C.*, 05-893 (La. App. 3 Cir. 2/1/06); 922 So.2d 690, 692-93. In Louisiana, criminal accusations are considered defamatory *per se*, and generally create a presumption of falsity and malice that the defendant bears the burden to refute. *Id.*  However, a defamation claim cannot be sustained based on statements in the context of pending litigation or a judicial proceeding, unless such statements are made with malice and without probable cause. *Id.*

The plaintiff claims that the criminal charge asserted against him created such a defamatory situation. However, after examining the petition, this court finds at no time did the plaintiff assert that the defendants wrote, printed, or otherwise orally expressed criminal accusations against him, with the exception of seeking judicial resolution of a possible criminal issue. And, as previously stated, the criminal action against the plaintiff is still pending, which bars him from successfully prosecuting a defamation claim against the defendants in relation to that criminal action.

The plaintiff also alleges that the unemployment proceedings were a form of defamation. With respect to this claim, he has failed to properly state a claim in which relief may be granted. In Louisiana, a plaintiff must allege and prove five things to successfully prosecute a defamation

claim:  (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. *Daigle v. Computrac*, 835 F.Supp. 903, 906 (E.D. La. 1993). The plaintiff falls short on the second prong of this analysis. In a case similar to this one, *Daigle v. Computrac*, a plaintiff sued his former employer for defamation after the employer filled out a mandatory Office of Employment Security ("OES") form, which stated that she had been fired because of an altercation with another employee.  *Id.* at 905.  Despite this statement in her OES file, OES eventually paid the benefits to the plaintiff.  *Id.* at 904-905. The *Daigle* court found that statements made to the OES did not rise to the level of defamation because the statement was not considered published.  *Id.* at 907.  Similarly, the defendants in this case denied the plaintiff unemployment benefits that were later granted to him by an Administrative Law Judge over the defendants' objection.  As in *Daigle*, the defendants' opposition during the unemployment proceedings does not constitute publication. Accordingly, the court must grant the defendants' motion to dismiss as it relates to the plaintiff's defamation claims.

## CONCLUSION

For the reasons stated above, the defendants' Motion to Dismiss will be granted as it relates to the plaintiff's Open Meetings Law claim, conspiracy claims, imprudent management/breach of fiduciary duty claim, malicious prosecution claim, and defamation claim. The defendants' motion will be denied to the extent the plaintiff has asserted a § 1983 First Amendment retaliation termination claim, as it appears the plaintiff has sufficiently pled the elements of such a claim, and it would be premature to dismiss this claim absent further factual development.

Lake Charles, Louisiana, this _____ day of _____ 2013.

_____
PATRICIA MINALDI
UNITED STATES DISTRICT
JUDGE