RECEIVED
IN LAKE CHARLES, LA.

SEP 24 2014

TONY R. MOORE, CLERK
BY_____
                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| KEITH HARDESTY, | * | CIVIL ACTION NO. 2:13-CV-293 |
| | * | |
| **Plaintiff,** | * | |
| v. | * | |
| | * | **JUDGE PATRICIA MINALDI** |
| | * | |
| WATERWORKS DISTRICT NO. 4 | * | |
| OF WARD FOUR, ET AL, | * | |
| | * | **MAG. JUDGE KATHLEEN KAY** |
| **Defendants.** | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is the defendants' Motion for Summary Judgment [Doc. 20], to which the plaintiff, Keith Hardesty ("Hardesty"), has filed an Opposition [Doc. 24], and the defendants have filed a Reply [Doc. 29]. Also before the court is the defendants' Motion for Summary Judgment [Doc. 22] on the issue of qualified immunity, to which the plaintiff has filed an Opposition [Doc. 26], and the defendants have filed a reply [Doc. 30]. For the following reasons, the defendants' Motion for Summary Judgment [Doc. 20] be and hereby is **DENIED**, and defendants' Motion for Summary Judgment [Doc. 22] is **DENIED**.

## FACTS & PROCEDURAL HISTORY

This lawsuit was originally instituted in the Fourteenth Judicial District Court in Calcasieu Parish, Louisiana, on January 15, 2013.[1] Hardesty brings claims stemming from a January 15, 2012, Board of Commissioners meeting, in which his employment as Superintendent of Waterworks District No. 4 of Ward Four ("District 4") was terminated by a Board vote of

---

[1] Compl. [Doc. 1-2].

1

three to one.[2]  In addition to suing District 4, the plaintiff also brings claims against the three

individual Board members who voted to terminate him, including Occie Norton, Kenny Cochran,

and Ollie L. "Johnny" Johnson, III (collectively "the individual defendants").[3]

Hardesty made statements about the alleged plan to transfer the water system to some District

4 customers between February 11, 2011 and March 2, 2011.[4]  During a March meeting of the

Board of Commissioners, several customers from the water district expressed concern about

possible annexation between the district and the City of Westlake.[5]  At a subsequent board

meeting on April 12, 2011, the Board "stressed to [Hardesty] the importance of the Board and its

employees working together as a team to accomplish the tasks ahead, and to follow the policies

and procedures set forth by the water district."[6]  One of the individual defendants, Mr. Johnson,

made a motion that if Hardesty "made any other defiant acts," he would be terminated.[7]  This

motion was seconded and carried.[8]  Additionally, Mr. Johnson told Hardesty that if he wished to

"remain in his present job until retirement," then he would have to "respect the board's directives

and become a team member moving forward."[9]

Water District customers later attended a September 12, 2011 board meeting to express

displeasure over the expenses involved in the water-sharing agreement with Westlake and

accusing board members of facilitating annexation between the district and Westlake.[10]

---

[2] *Id.* ¶¶ 1-3.
[3] *Id.* ¶ 1.
[4] Ex 1. Depo. of Keith Hardesty [Doc. 20-3], at 87.
[5] Mins. from March 14, 2011 Board Meeting [Doc. 20-3], at 238.
[6] *Id.* at 108; Mins. from the April 12, 2011 Board Meeting [Doc 20-3], at 239.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Mins. from the Sept. 12, 2011 Board Meeting [Doc. 20-3], at 248.

Concerned customers appeared again at the board meeting on October 17, 2011, and expressed anxiety over the expense of the connection with Westlake.[11]

On January 16, 2012, Hardesty was formally discharged by a vote of three to one by the Board of Commissioners.[12] Hardesty was subsequently terminated "due to insubordination and defiance."[13] The individual defendants voted in favor of dismissal, and Richard Hebert voted against dismissal of the plaintiff.[14]

Hardesty and the defendants dispute the cause of his dismissal. The defendants allege that Hardesty was terminated for misconduct.[15] Hardesty's misconduct as alleged by the defendants includes (1) using his work cell phone to make personal calls, (2) hiring his son to work for District 4 in violation of Louisiana Ethics Law, (3) purchasing materials in violation of Louisiana's Public Bid Law, (4) using public funds to purchase tires for a privately owned trailer, (5) failing to accurately record his time on the timesheets, (6) using public vehicles for public use, (7) smoking in public vehicles, and (8) pressuring a developer into using his nephew's construction company.[16] Hardesty either denies engaging in the prohibited activity or counters that the defendants were complicit in or approved his actions.[17] Hardesty argues that he was terminated for his comments about the water system transfer.[18]

After the plaintiff filed this lawsuit, the defendants timely removed the action to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331.[19] Defendants then moved to

---

[11] Mins. from Oct. 17, 2011 Board Meeting [Doc. 20-3], at 252.
[12] Compl. [Doc. 1-2] ¶ 3.
[13] Mins. from Jan. 16, 2012 Board Meeting [Doc. 20-3], at 258.
[14] Id. ¶ 6.
[15] Mem. in Supp. of Defs.' Mot. for Summ. J. [Doc. 20-1], at 5-7.
[16] Id.
[17] Pl.'s Mem. and Incorporated Aff. with Itemized Opp'n to Def.'s [sic] Statement of Uncontested Material Facts [Doc. 25], at 3-12.
[18] Id. at 12.
[19] Not. of Removal [Doc. 1].

3

dismiss all of Hardesty's claims.[20]  This court subsequently dismissed all of the claims against the defendants except for the plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983.[21]  Defendants have now moved for summary judgment on the First Amendment retaliation claim arguing that (1) there was no violation of the First Amendment, and (2) in the alternative, the individual defendants are entitled to qualified immunity.

## LAW & ANALYSIS

### I.      Summary Judgment Standard

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.,* No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir. 2006)).  "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.,* No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (additional citation omitted)).  However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove

---

[20] Def.'s Mot. to Dismiss for Failure to State a Claim [Doc. 2].
[21] Mem. Ruling on Mot. to Dismiss [Doc. 8], at 6-15; J. on Mot. to Dismiss [Doc. 9].

the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

## II.   Admission of Hardesty's Affidavit

As a preliminary matter, the defendants contend that the court is precluded from considering Hardesty's affidavit in deciding the motion for summary judgment. It is true that the "court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 496 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.,* 92 F.2d 128, 137 n. 23 (5th Cir. 1992); and *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 228 (5th Cir. 1980)). However, the court also "cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 893 (5th Cir. 1980). And, although it may differ or vary from his evidence as given by deposition or another affidavit, and the two in conjunction may disclose an issue of credibility, a party's affidavit should still be considered in determining whether to grant a summary judgment. *Id.* (citing 6 Moore's Federal Practice ¶ 56-15(4), p. 56-522 (2d Ed.)).

In *S.W.S. Erectors, Inc.,* the deposition testimony of the plaintiff's representative included a statement that the agreement at issue was a conditional promise to pay. *S.W.S. Erectors, Inc.,* 72 F.3d at 496. Later, the plaintiff submitted an affidavit from the same representative that swore that the agreement was a freestanding promise of guaranteed payment. *Id.* In holding that the affidavit did not create a genuine dispute of material fact, the Fifth Circuit reasoned that the plaintiff did not contend that its representative misspoke, that it was apparent that the deposition and affidavit were substantially different, and that the affidavit did not serve as a supplement to the deposition testimony. *Id.*

5

In contrast with *S.W.S. Erectors*, the Fifth Circuit held in *Kennett-Murray* that it was error for the district court to exclude issues raised in the defendant's affidavit where the affidavit was generally consistent with the position forwarded in the deposition. *Kennett-Murray Corp.*, 622 F.2d at 895. The Court reasoned that the gravamen of the line of cases excluding a contradictory affidavit from consideration was that the issue raised by the contradictory affidavit constituted a sham and acknowledged that "every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." *Id.* at 894 (citing *Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir. 1977)).

During his deposition, Hardesty stated that he felt he had a "responsibility" and "duty" to tell District 4's customers about the plan to transfer the water system.[22] In his affidavit, Hardesty asserts that "defense counsel had me state that I felt like it was my duty as manager to inform the community. Actually, that duty was not in my job description, or in a personnel policy manual, or in any way stated by the BOC to be my duty."[23] Hardesty also elaborates further and states, "[I]mparting the information to customers was not required of me, as a part of my duties."[24] The defendants contend that the statements in Hardesty's deposition and the statements in Hardesty's affidavit are an irreconcilable contradiction, so Hardesty's affidavit should be excluded from consideration.

Hardesty's deposition testimony is susceptible to differing interpretations. One interpretation is that when Hardesty said he felt that he "had a responsibility" as the manager that he was referring to an official responsibility—a task to be completed in accordance with the

---

[22] Defs.' Reply to Pl.'s Opp. To Defs.' Mot. for Summ. J. [Doc. 29], at 5. When questioned about his reasons for talking to the public about giving the water system to the City of Westlake, Hardesty stated that he felt "it was my duty as a citizen of that district." Ex. 1 Hardesty Depo. [Doc. 20-3], at 109-10. Hardesty was then asked if he also felt "like he had a responsibility to [tell people about the plans for the water system] as the manager of the Water District." *Id.* Hardesty answered affirmatively. *Id.*
[23] Pl.'s Mem. in Opp. To Def. District's Mot. for Summ J. [Doc. 25], at 4.
[24] *Id.* (emphasis in original).

requirements of his position.  The other interpretation is that Hardesty was referring to a moral responsibility to inform the public arising from the unique access to knowledge and experience he had as plant manager.  The affidavit appears to be an attempt to clarify which of these interpretations is appropriate, and because of the ambiguity of the deposition testimony, the affidavit can be fairly considered as a supplement to that testimony.  Therefore, finding the affidavit to be neither a sham nor so clearly contradictory as to warrant exclusion, the court will consider the affidavit in ruling on the defendants' motions for summary judgment.

## III.    First Amendment Retaliation Claim Under Section 1983

A state employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers,* 461 U.S. 138, 142 (1983).  "The First Amendment protects an employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006) (citing *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968); and *Connick,* 461 U.S. at 147) (additional citations omitted). Section 1983 creates a cause of action for the deprivation of a constitutional right by a state actor. *See* 42 U.S.C. § 1983 (2012).

To make a *prima facie* showing for a claim of retaliation for exercise of First Amendment rights under Section 1983, a plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the government defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct. *See Juarez v. Aguilar,* 666 F.3d 325, 332 (5th Cir. 2011).  The defendants do not contest the first or third elements of the First Amendment retaliation claim—that Hardesty suffered an adverse employment action, and that his interest in

speaking outweighed the defendants' interest in promoting efficiency. The defendants limit their argument to whether Hardesty was speaking as a citizen on a matter of public concern and whether Hardesty has established that his protected speech motivated the defendants' conduct.

## A. Did Hardesty Engage in a Protected Activity?

The defendants dispute that Hardesty has established that his speech was a matter of public concern under the second prong of his *prima facie* case for retaliation. After *Garcetti*, a threshold element was added to this second prong, requiring that the plaintiff was speaking as "a citizen"—not as an employee—on a "matter of public concern" to receive the protections of the First Amendment. *Davis v. McKinney*, 518 F.3d 304, 311-312 (5th Cir. 2008) (citing *Mills v. City of Evansville*, 452 F.3d 646, 647-48 (7th Cir. 2006). The court considers factual circumstances to determine whether the plaintiff was speaking as a citizen, but the determination is still ultimately a question of law. *Charles v. Grief*, 522 F.3d 508, 513 n. 17 (5th Cir. 2008). If the court determines that the employee did not speak as a citizen, then the analysis concludes because the employee has no First Amendment cause of action based on his employer's reaction to the speech. *Id.* at 418 (citing *Connick*, 461 U.S. at 147).

## 1. Was Hardesty Speaking as a Citizen?

Public employees' communications are not insulated from employer discipline by the First Amendment when those statements are made "pursuant to their official duties." *Garcetti*, 547 U.S. at 421. The critical question under *Garcetti* is whether the speech at issue is itself "ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S.Ct. 2369, 2379 (2014). "[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* Formal job descriptions are similarly

not dispositive of whether an employee is speaking as a citizen. *Davis v. Kinney,* 518 F.3d 304, 312 (5th Cir. 2008) (citing *Garcetti,* 547 U.S. at 421-22). Examples of prototypical protected speech by public employees include "making a public statement, discussing politics with a coworker, writing a letter to newspapers or legislators, or otherwise speaking as a citizen." *Id.* (citing *Spiegla v. Hull,* 481 F.3d 961, 967 (7th Cir. 2007)).

The Fifth Circuit has considered two cases post-*Lane*.[25]  While neither case contains facts analogous to the present case, the reasoning is instructive. *See Cox v. Kaelin,* No. 13-41343, 2014 WL 3866128, at *4 (5th Cir. Aug 7, 2014) (holding that plaintiff's role as "a citizen" was not impacted by the relationship between his role in a political action committee and employment as a deputy sheriff or by his support for the sheriff's opponent in an upcoming election); and *Hurst v. Lee County, Mississippi,* No. 13-60540, 2014 WL 4109647, at *1-3, (5th Cir. Aug. 21, 2014) (holding that plaintiff was not speaking as a "citizen" when he failed to obtain authorization to make statements to the media and violated the department's media relations policy).  Both cases exclusively focus on whether the speech at issue was "ordinarily within the scope of an employee's duties." *See Cox,* No. 13-41343, 2014 WL 3866128, at *4 (quoting *Lane,* 134 S.Ct. at 1279); and *Hurst,* No. 13-60540, 2014 WL 4109647, at *3 (quoting *Lane,* 134 S.Ct. at 1279).

Defendants assert that when Hardesty communicated his concerns about the water system to customers, he was acting within the scope of his duties as a System Manager.[26]  In the Waterworks Employee Handbook, one of the responsibilities listed in the job description for a

---

[25] The Fifth Circuit also cited to *Lane* in *Cutler v. Stephen F. Austin State Univ.,* No. 13-40685, 2014 WL 4548549 (5th Cir. Sept. 15, 2014), but the defendants in that case conceded that there was a violation of the plaintiff's constitutional right.

[26] Defs.' Mem. in Supp. Of Defs.' Mot. for Summ. J. [Doc. 20-1], at 8-13.

"System Manager & Plant Operator" is "[p]ublic relations with customers."[27]  When questioned about his reasons for talking to the public about giving the water system to the City of Westlake, Hardesty stated that he felt "it was my duty as a citizen of that district."[28]  Hardesty was then asked if he also felt "like he had a responsibility to [tell people about the plans for the water system] as the manager of the Water District."[29]  Hardesty answered affirmatively.[30]

However, although Hardesty's job description lists "public relations with customers," this is not dispositive.  While it is uncontroverted that Hardesty acted as a representative for the Water District in negotiating contracts, there is no evidence that making public statements was ordinarily within his duties.[31]  Furthermore, even if Hardesty's job functions ordinarily included public statements, this fact cannot be construed to mean that every communication with an individual who happened to be a customer of the Water District would be pursuant to Hardesty's official duties—even if some of those conversations included information about his job or opinions on issues related to his job.

There is no indication that these comments were characterized or classified as official communications on behalf of the Water District.  There is similarly no allegation that the statements by Hardesty were in furtherance of job performance or the Water District's interests.  The comments were not made to all Water District customers, and Hardesty had a prior personal relationship with at least one of the individuals he spoke with.[32]  Therefore, Hardesty's speech was not within the course of his ordinary duties, and he was speaking as a citizen for purposes of determining whether his speech is entitled to protection under the Fourth Amendment.

---

[27] Ex. 5 Employee Handbook [Doc. 20-3], at 290.
[28] Ex. 1 Hardesty Depo. [Doc. 20-3], at 109-10.
[29] *Id.*
[30] *Id.*
[31] *See id.*
[32] Hardesty had known Shari Williamson for approximately eight years; Ms. Williamson was his daughter's former sister-in-law. *Id.*, at 116.

## 2. Did Hardesty's Speech Involve Matters of Public Concern?

"Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of a legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Lane*, 134 S.Ct. at 2380 (quoting *Snyder v. Phelps,* 131 S.Ct. 1207, 1216 (2011)). The "content, form, and context" of the speech are also relevant. *Id.* (quoting *Connick*, 461 U.S. at 147-48). The Supreme Court has repeatedly emphasized that "criticism of the government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) (finding First Amendment protection for a newspaper column criticizing the supervisor of the county recreation association).

The defendants have not disputed this issue, but the court finds that the speech involved matters of public concern. Hardesty's statements were critical of the alleged plan to transfer the water system to Westlake. The alleged transfer was an issue that the public cared about, and on more than one occasion, concerned citizens showed up at board meetings to express their displeasure with the plan. Because Hardesty was speaking as a citizen and his statements were a matter of public concern, the second prong of his *prima facie* case for retaliation for expression of First Amendment rights under Section 1983 is satisfied.

## B. The Causal Connection Between Hardesty's Protected Activity and the Adverse Employment Action

The defendants also allege that Hardesty has failed to establish a *prima facie* case that his termination was motivated by his speech. To satisfy the fourth prong of a *prima facie* case for retaliation, the plaintiff must show that his protected speech was a substantial or motivating factor in the adverse employment decision. *Moore v. Huse,* No. 13-10992, 2014 WL 3866107, at *3 (5th Cir. Aug. 7, 2014) (citing *Juarez,* 666 F.3d at 332)). "[S]ummary disposition of the

11

causation issue in First Amendment retaliation claims is generally inappropriate." *Haverda v. Hays County*, 723 F.3d 586, 595 (5th Cir. 2013) (citing *Click v. Copeland*, 970 F.2d 106, 113-14 (5th Cir. 1992)).  However, summary judgment may still be proper if the defendants can show that they would have taken the same action even in the absence of the protected conduct. *Lawson v. City of Monroe*, No. 3:12-cv-2233, 2014 WL 4251755, at *4 (5th Cir. Aug. 29, 2014) (citing *Mount Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  The defendants must satisfy this showing through a preponderance of the evidence. *Mt. Healthy City Sch. Dist. Bd.*, 429 U.S. at 287.

An employee may refute such a showing by the defendants by presenting evidence that his employer's explanation for the adverse employment action is merely pretextual. *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991).  If the plaintiff brings forth evidence of pretext, the determination whether the employer's stated reasons are pretextual is a fact issue reserved for the jury.  *Haverda*, 723 F.3d at 596 (citing *Click*, 970 F.2d at 113-14; and *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 193 (5th Cir. 1988)).

Temporal proximity between an employee's protected speech and his subsequent termination may be a sufficient basis for a court to find a causal connection sufficient for a *prima facie* case for retaliation. *Mooney v. Lafayette Cty. Sch. Dist.*, 538 Fed.Appx. 447, 454 (5th Cir. 2013) (citing *Evans v. City of Hous.*, 246 F. 3d 344, 354 (5th Cir. 2001)).  However, this is not the exclusive method of showing causation.  The causal connection prong may also be satisfied when the "plaintiff relies upon a chronology of events from which retaliation may plausibly be inferred." *Id.* (citing *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1149, 1424 (5th Cir. 1997)).

.

Hardesty spoke of the alleged plan to transfer the water system between February 11, 2011 and March 2, 2011.[33]  Shortly after water district customers appeared at a board meeting to voice concerns over the plan, the Board "stressed to [Hardesty] the importance of the Board and its employees working together as a team to accomplish the tasks ahead, and to follow the policies and procedures set forth by the water district."[34]  One of the individual defendants, Mr. Johnson, made a motion that if Hardesty "made any other defiant acts," he would be terminated.[35]  This motion was seconded and carried.[36]  Additionally, Mr. Johnson told Hardesty that if he wished to "remain in his present job until retirement," then he would have to "respect the board's directives and become a team member moving forward."[37]

However, Water District customers continued to attend board meetings to complain.  On September 12, 2011, customers attended a board meeting to express displeasure over the expenses involved in the water-sharing agreement with Westlake and accusing board members of facilitating annexation between the district and Westlake.[38]  Concerned customers appeared again at the board meeting on October 17, 2011, and expressed anxiety over the expense of the connection with Westlake.[39]  Hardesty was subsequently terminated "due to insubordination and defiance" in a Board meeting on January 16, 2012.[40]  The court finds that this sequence of events is sufficient to establish an inference of retaliation.

While the court does not question there were quite possibly myriad reasonable bases for terminating Hardesty's employment, none of those reasons were expressed in the basis for the

---

[33] Ex. 1. Depo. of Keith Hardesty [Doc. 20-3], at 87.
[34] Ex 1. Depo. of Keith Hardesty [Doc 20-3]; at 108; Mins. from the April 12, 2011 Board Meeting [Doc 20-3], at 239.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] Mins. from the Sept. 12, 2011 Board Meeting [Doc. 20-3], at 248.
[39] Mins. from Oct. 17, 2011 Board Meeting [Doc. 20-3], at 252.
[40] Mins. from Jan. 16, 2012 Board Meeting [Doc. 20-3], at 258.

motion to terminate his employment at the Board meeting.[41]  The issue is not whether Hardesty *could* have been disciplined for his actions, but whether he *would* have been disciplined if he had not engaged in protected speech.  *See Haverda*, 723 F.3d at 597 (citing *Mt. Healthy*, 429 U.S. at 287; and *Jordan v. Ector Cnty.*, 516 F.3d 290, 301 (5th Cir. 2008)).

Hardesty has offered evidence that the Board had knowledge of and acquiesced to Hardesty's questionable actions for years before his termination.  Hardesty also alleges that his coworker Brian was a similarly situated employee who was not terminated.  *See Jordan*, 516 F.3d at 301 ("However plausible, even compelling, the proffered justifications for firing [the plaintiff] sound in isolation, the evidence that others had engaged in conduct similar to [the plaintiff's] without being disciplined is sufficient for a reasonable jury to conclude that [the employer] would not have taken the same action in the absence of the protected conduct.").  Additionally, Hardesty submitted a petition with over 600 signatures from Water District customers opposed to his termination, highlighting that members of the community felt he was doing an acceptable job.  Furthermore, Hardesty emphasizes that his official termination was based on "defiance" and "insubordination" and that none of the justifications offered by the defendants were mentioned in his termination.  A reasonable jury could consider all of the above evidence and find that the defendants failed to show that they would have terminated Hardesty in the absence of the protected speech.  Because there exists a genuine dispute as to a material fact on this issue, summary judgment is inappropriate based on causation.  Accordingly,

**IT IS ORDERED** that the defendant's Motion for Summary Judgment [Doc. 20] be and hereby is **DENIED.**

IV.     **The Individual Defendants' Entitlement to Qualified Immunity**

---

[41] *Id.*

14

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  The effect of qualified immunity is to give "government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2085 (2011).  To rebut a defendant's qualified immunity defense, the plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 2080.  The court has discretion to decide which of the two prongs of the analysis to consider first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

A defense of qualified immunity is appropriate for summary judgment when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct, or (2) the court "skip[s] . . . still-contested matters to consider an issue that would moot their effect if proved." *Haverda,* 723 F.3d at 599 (citing *Barker v. Norman,* 651 F.2d 1107, 1124 (5th Cir. Unit A July 1981)).  A case is inappropriate for summary judgment when resolution of qualified immunity turns on what the defendant did; if one version of the defendant's conduct would establish liability and the other version would defeat liability, then summary judgment should not be granted. *Id.* (citing *Barker,* 651 F.2d at 1123-24).

One part of the rebuttal to a defense of qualified immunity is that the defendant violated a statutory or constitutional right. As discussed, *supra,* taking the facts in the light most favorable to Hardesty, there is a genuine dispute as to the material facts regarding whether he was terminated for exercising his protected right to free speech.  This prong of the rebuttal is satisfied.

There are two points of analysis for the second prong of the qualified immunity defense: (1) whether the law was clearly established at the time of the alleged offense; and (2) whether the official's actions were objectively reasonable in light of clearly established law. *Id.* at 598, (citing *Lytle  v. Bexnar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009); and *Harlow,* 457 U.S. at 818-19).

At the time of the alleged violation of Hardesty's free speech rights, the Supreme Court and the Fifth Circuit both clearly proscribed retaliation by a government employer against an employee for engaging in protected speech. *Cutler v. Stephen F. Austin State Univ.,* No. 13-40685, 2014 WL 4548549, at *6-8 (Sept. 15, 2014) ("Several pre-2010 decisions have . . . given the Defendants the 'fair warning' they need."); *see also Davis,* 518 F.3d at 317; and *Charles v. Grief,* 522 F.3d 508, 511 (5th Cir. 2008).  The right not to be fired for engaging in protected speech was clearly established.  *Haverda,* 723 F.3d at 599 (citing *Charles,* 522 F.3d at 508). Additionally, terminating an employee for engaging in protected speech is an objectively unreasonable violation of such an employee's First Amendment rights.  *Grief,* 522 F.3d at 511. Therefore, the second prong of the rebuttal against the presumption of qualified immunity is also satisfied.  The individual defendants are not entitled to qualified immunity.  Accordingly,

**IT IS ORDERED** that the defendants' Motion for Summary Judgment [Doc. 22] on the basis of qualified immunity be and hereby is **DENIED.**

Lake Charles, Louisiana, this 23 day of Sept, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE