UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KEITH HARDESTY** | : | **DOCKET NO. 13-cv-293** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **WATERWORKS DISTRICT NO. 4 OF WARD 4, ET AL** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion to Enforce Settlement filed by defendants, Waterworks District No. 4 of Ward Four, Occie Norton, Kenny Cochran, and Ollie L. Johnson, III (collectively referred to as "defendants"). Doc. 73. The motion is opposed by plaintiff, Keith Hardesty ("Hardesty"). The motion was referred to the undersigned to conduct an evidentiary hearing. For the following reasons, it is recommended that the motion be **GRANTED**.

### I.
### PROCEDURAL HISTORY

In January 2013 Hardesty filed a lawsuit in Fourteenth Judicial District Court in Calcasieu Parish, Louisiana. Doc. 1, att. 2. Attorney Maurice Tynes filed suit on Hardesty's behalf. *Id.* The suit alleges various claims arising from Hardesty's termination as Superintendent of Waterworks District No. 4 of Ward Four. *Id.*

The lawsuit was removed to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1. A motion to dismiss filed by defendants was granted in part and denied in part leaving only Hardesty's claim against the defendants for First Amendment retaliation termination. Docs. 8, 9.

Shortly before the jury trial was scheduled to begin, counsel entered into a written settlement agreement and filed a joint motion to dismiss. Doc. 61. A sixty-day judgment of dismissal was signed by the district judge. Doc. 68. Thereafter Tynes filed a motion to reopen or reinstate the case. Doc. 69. In that motion, which was granted by the district court, Tynes alleged that, after the settlement was reached, his client informed him that he did not have authority to dismiss the case. *Id.*

In response, defendants filed the Motion to Enforce Settlement, which motion is currently before the court. Doc. 73. Tynes subsequently withdrew as counsel for Hardesty. Docs. 77, 81. The district court referred the motion to the undersigned in order to conduct an evidentiary hearing and issue a report and recommendation.

A hearing was held before the undersigned, testimony was heard, and the parties were allowed to submit post-hearing memoranda. The matter is now ripe for consideration.

## II.
### TESTIMONY AND EVIDENCE

Hardesty was employed as Superintendent of Waterworks District No. 4 of Ward Four which is located in Westlake, Louisiana. He was terminated in January 2012. The three named individual defendants, Norton, Cochran, and Johnson, were members of The Waterwork's Board of Commissioners when Hardesty was terminated. These three individuals voted in favor of Hardesty's termination. Richard Hebert ("Hebert") was the fourth member of the Board of Commissioners. He voted against Hardesty's termination. Doc. 1, att. 2, Doc. 91 pp. 17-18.

The Heberts and Hardesty are close friends. While Hardesty was an employee of District 4 he also worked for Hebert digging graves at Hebert's cemetery. Hebert paid him cash for this work and neither Hebert nor Hardesty reported this income to the Internal Revenue Service. After

Hardesty was terminated, Hebert and his wife referred Hardesty to attorney Tynes.  Doc. 91, pp. 17, 18, 27, 41.

On September 21, 2012 Hardesty and Tynes entered into a contingency fee contract which contained the following clause:

> **IT IS UNDERSTOOD AND HEREBY AGREED** that this claim may not be settled, compromised, released, discontinued or otherwise disposed of without the written consent of both parties hereto, as provided by LSA R.S. 37:218.  It is further acknowledged that results are not guaranteed.

Doc. 89, att. 1.  This contract was not recorded with the office of the clerk of court.  Doc. 91, pp. 11, 13.

Tynes filed the lawsuit for Hardesty.  This lawsuit pitted Commissioner against Commissioner in the small town of Westlake, Louisiana, and emotions surrounding the suit ran high.  The suit proceeded with motions, discovery, an appeal to the United Stated Fifth Circuit Court of Appeals, and ultimately the motion to dismiss.  Doc. 91, pp. 45-46.

According to the testimony given at hearing an in March of 2016, Tynes initiated a meeting with Hardesty and the Heberts at Tynes' office.  Hardesty and Hebert thought the meeting was to prepare the case for the upcoming trial.  They met on March 29, 2016.  At the meeting Tynes explained there were obstacles in Hardesty's case that he did not think were able to be overcome.  Tynes announced that he could not go forward with the case.  In response, Hardesty told Tynes, "You own this case."  Doc. 91, pp. 8, 23, 28, 42, 47.

At the meeting Tynes went on to explain that he had recently, in the course of discovery, obtained a copy of Hardesty's tax returns that were going to be submitted into evidence at trial.  These tax returns showed that Hardesty had not reported the income received from work he performed at Hebert's cemetery.  Tynes explained that the case hinged on Hardesty's credibility and that evidence that Hardesty did not declare this income together with other obstacles had a

cumulative effect of destroying the case. At this point Tynes was convinced that Hardesty's credibility had been destroyed. As each obstacle was discussed Hardesty indicated that he understood and agreed with Tynes' conclusion. Doc. 91, pp. 42-45, 47-48, 62-63, 74-77.

At no point during this meeting did Tynes actually use the words "I'm going to settle your case" and Tynes never specifically asked permission from Hardesty to settle the case. However, at the conclusion of the meeting Tynes understood that he had authority to settle Hardesty's case. Doc. 91, pp. 9, 41-42, 47-48, 55, 61, 62-66, 76-77, 95-96.

After the case was dismissed, Hardesty called Tynes and Tynes told him that the case was settled and there was no need to miss work for the upcoming trial. Hardesty reacted surprised at this information and asked, "what can we do now?" Tynes believed Hardesty had changed his mind about the dismissal. Doc. 91, pp. 51-53, 54-55.

### III.
### APPLICABLE LAW

Hardesty's claims arise out of rights secured by the United States Constitution; therefore, this court has of federal question jurisdiction pursuant to 28 U.S.C. § 1331. When the substantive rights and liabilities of the parties derive from federal law, such as in this lawsuit, federal common law governs the enforceability or validity of settlement agreements. *Mid. South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 389 (5th Cir.1984). Under federal law, while an attorney may not compromise a matter without his client's consent, the attorney of record is presumed to have authority to compromise and settle his client's lawsuit. *Quesada v. Napolitano,* 701 F.3d 1080, 1084 (5th Cir.2012).

When the attorney of record enters into an agreement to settle his client's claim, the judgment will be set aside only "upon affirmative proof of the party seeking to vacate the judgment

that the attorney had no right to consent to its entry." *Quesada v. Napolitano,* 701 F.3d 1080, 1084 (5th Cir. 2012).

When a party informs his attorney after an agreement has been reached that he was not authorized to settle, this does not amount to affirmative proof that the attorney had no authority, actual or apparent, to settle. *Lion InvestBanc, L.L.C. v. Kennedy,* 2004 WL 1597342, *5 (E.D. La. 7/16/04) citing *Mid. South Towing Co.,* 733 F.2d at 391.

Actual authority is either express or implied. *Esso Int'l, Inc. v. S.S. Captain John*, 443 F.2d 1144, 1146 (5th Cir.1971). Actual authority is created "by words that expressly or directly authorize [the agent] to do a delegable act." *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944–45 (5th Cir. 1983). Actual authority may also be implied from the facts and circumstances attending the transaction in question including the words and conduct of the parties. *Esso Int'l* 443 F.2d at 1146.

Louisiana Revised Statute 37:218 authorizes the use of attorney contingency fee contracts. The statue provides that "it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim." It further provides that either party to the contract may "file and record it with the clerk of court" and after such filing "any settlement . . . of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void." The Louisiana Supreme court found that the intent of R.S. 37:218 is "to prevent a client's discharging an attorney and thereby depriving the attorney of his earned fee." *Scott v. Kemper Ins. Co.*, 377 So.2d 66, 70 (La.1979).

When a contingency fee contract is not recorded the contract will still be the law between the parties but "it will have no effect against third parties." *Ruiz v. Williams*, 425 So.2d 929, 931 (La.App. 4th Cir1983).

## IV.
### ANALYSIS

Applying the facts adduced at the hearing and the applicable law this court can reach no conclusion other than Tynes had authority to settle Hardesty's case. While all witnesses agreed that Hardesty never expressly authorized Tynes to "go ahead and settle my case," the credible evidence suggests that Hardesty, through words and conduct exhibited at the March 29, 2016, meeting, gave Tynes authority to settle his claim.

The court finds the testimony of Tynes exceedingly credible. His calm, reasoned testimony and demeanor on the witness stand convinces this court that his account of events is accurate. He stated that he has represented thousands of clients over his fifty years of practicing law and has never before settled a case, including this one, without a client's authority. Doc. 91, p. 56. He testified that he felt the case was an "absolute loser" and explained to Hardesty that losing would be an embarrassment considering the intense emotions surrounding the case. Doc. 91, pp. 42-46. He also stated that he explained to Hardesty that defendants had a viable claim against him for attorney's fees should he lose the case. He pointed out the fact that there could be a large judgment against him should he lose considering there were several contested pretrial motions, one of which was appealed and decided at the United States Fifth Circuit Court of Appeals. Doc. 91, p. 46.

Tynes testified that, as he discussed each of these obstacles, in addition to others, at the March, 2016, meeting Hardesty nodded his head in agreement and verbally expressed his understanding. Doc. 91, pp. 47-48, 62-63, 74-77. When the meeting was over Tynes knew he had to dismiss the case because "that's what everybody agreed to do." Doc. 91, p. 48. Tynes

unequivocally understood that he had authority to settle the case. Doc. 91, pp. 41-42, 47-48, 55, 62-66, 95-96.

In his post-hearing memorandum Hardesty maintains that he never authorized Tynes to settle his case. He points out that at the meeting Tynes told him that he was not going to go forward with the case and that he could find another lawyer. In response to this Hardesty told Tynes that he "owned the case." Hardesty maintains that this testimony supports the fact that he did not authorize Tynes to dismiss the case. This testimony is not disputed; however, when Tynes stated that he was not going forward with the case he also recommended that Hardesty not do so and that he follow his recommendation. Doc. 91, pp. 76-77.

Hardesty suggests that the fact that terms of settlement were never discussed at the meeting is further proof that Tynes did not have authority to settle. Tynes admits this in his testimony; however, Tynes' recommendation was to dismiss the suit. There were no other settlement terms to discuss. The fact that Tynes also negotiated with defense counsel to dismiss the claim for attorney's fees against Hardesty was something he knew he had to do in his role as advocate for Hardesty. Doc. 91, p. 50.

Finally, Hardesty asserts that the contingency fee agreement provided that Tynes could not settle the case without the written consent of both parties. Both parties admit that this contract was never recorded. Doc. 91, pp. 11, 35. The law is clear that when the contract is not recorded it will have no effect on third parties. *Ruiz v Williams*, 425 So.2d 929, 931 (La.App. 4th Cir.1983). Defendants are not parties to this contingency fee contract and under these facts the "consent to settlement" clause does not vitiate the fact that Tynes had apparent authority to settle the claim with the "third party" defendants.

Tynes is presumed to have authority to settle his client's case. *Quesada v. Napolitano,* 701 F.3d 1080, 1084 (5th Cir. 2012). The burden is on Hardesty to present affirmative proof that Tynes did not have such authority. *Id.* We accept the testimony of Tynes that Hardesty's words and conduct at the March 29, 2016 meeting gave him authority to settle his case. Tynes testified that when he told Hardesty that the case was settled Hardesty, replied that he didn't think it would be dismissed at that moment, not that it would never be dismissed. Doc. 91, pp. 52, 53. While we believe, and it is undisputed, that the words "you may settle my case" were never uttered by Hardesty, we also believe that Hardesty understood after his meeting with Tynes that his case could not go forward and would be dismissed. We are convinced that Tynes acted with authority when he negotiated the settlement with defendants.

## V.
### CONCLUSION

We find that Hardesty has failed to carry his burden and recommend that the Motion to Enforce Settlement [#73] be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

THUS DONE AND SIGNED in Chambers this 16th day of October, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE